UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

KIAMA FALTINE,

                Plaintiff,

    -against-

THE CITY OF NEW YORK, POLICE OFFICER
MIGUEL VARGAS (Shield # 13912; Tax # 945075),
SERGEANT ERIC NOLAN (Tax #924256) and
POLICE OFFICERS JOHN DOE
1-3,

                Defendants.
------------------------------------------------------------------x

MEMORANDUM AND ORDER

12-cv-03487 (ENV) (SMG)

VITALIANO, D.J.

      On February 20, 2013, plaintiff Kiama Faltine requested leave to file an amended complaint adding Detective Harry Menendez as a defendant in this action. The Court denied Faltine's request on the grounds of futility, since the proposed amended complaint would fail to state a claim against Menendez under 42 U.S.C. § 1983. Faltine now renews his request and has submitted a new proposed amended complaint. Although this proposed pleading includes significantly more detail than the previous proposal, the Court nonetheless finds once again that the amendments would be futile, and that Faltine's claim against Menendez would fail as a matter of law. His renewed motion, as a consequence, is denied.

### DISCUSSION

      The relevant factual allegations in the second proposed amended complaint are as follows. Faltine contends that in 2008, Menendez issued an identification card, or "I-card," naming him as a witness to an assault that had taken place in the building where he lives.

1

(Second Prop. Am. Compl. ¶¶ 25-26). Menendez and other detectives interviewed Faltine several days after the incident under investigation. (*Id.* ¶¶ 27-29). Faltine contends that, in spite of the completion of the interview, Menendez "refused to revoke the I-card," and that he was arrested on numerous occasions thereafter on account of the I-card. (*Id.* ¶¶ 30-32). Plaintiff alleges that his mother contacted Menendez following each incident, and that Menendez promised to have the I-card removed "from the system," but failed to do so. (*Id.* ¶¶ 33-36). He further claims that his mother filed a complaint with the Civilian Complaint Review Board regarding the I-card in 2009, but has heard nothing other than that the complaint was being handled by the New York Police Department's Internal Affairs Bureau. (*Id.* ¶¶ 37-40).

With regard to the March 21, 2012 incident, Faltine claims that defendant officers Nolan and Vargas unlawfully detained him in jail after learning about the existence of the I-card in the system. (*Id.* ¶¶ 46-58). He asserts that the officers kept him in jail because departmental protocol directs arresting officers to treat an I-card as a kind of "hold;" they must notify a detective who has issued an I-card that they have apprehended the individual in question, or notify some other available detective if they are unable to contact the original detective. (*Id.*) Because Detective Menendez was out of the office that day, and the available officers were unsure of the purpose of the I-card for Faltine, the officers allegedly detained him until the following morning at 10:30 A.M., when they released him without filing charges. (*Id.* ¶¶ 44, 46-54). There is no claim or suggestion that the reason Faltine was arrested had any connection whatsoever with the issuance of the I-card by Detective Menendez. Instead, Faltine claims that his initial detention was extended when the arresting officers learned about the I-card after they had already arrested him and taken him back to the police station.

Faltine's theory is that Detective Menendez "maliciously refused to remove the I-card

'from the system', despite his knowledge and awareness that the plaintiff was being continually arrested and detained by other NYPD officers, pursuant to said I-card." (*Id.* ¶ 60). Accordingly, Faltine seeks to assert § 1983 claims against Menendez for having been a proximate cause of his allegedly unlawful detention.

The Second Circuit has made clear that "[t]o establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that the defendant intentionally confined him without his consent and without justification." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotations omitted).[1] Yet, by all accounts, Menendez was away from work on March 21 and 22, 2012 and was not aware of, much less involved in, Faltine's arrest and detention on those dates. (*Id.* ¶ 52 n.3). It is immaterial whether or not Menendez knew Faltine had *previously* been arrested and/or detained on account of the I-card; he was not aware of this *particular* detention, and therefore could not have "intentionally confined" Faltine—directly or indirectly—on the dates in question. A remedy, if any, could only lie against those who actually *did* intentionally confine him.

Moreover, Faltine has pleaded no facts to support his conclusory assertion that Menendez "*maliciously*" failed to remove the I-card "from the system." At most, although not likely, his claim that Menendez failed to fulfill his promise to Faltine's mother that he would remove the I-card amounts to an allegation of simple negligence. As the Supreme Court has made plain, in any event, allegations of mere negligence cannot sustain a cause of action under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("[I]njuries inflicted by governmental negligence are not

---

[1] The same standard applies under New York law. *See, e.g., Middleton v. State*, 54 A.D.2d 450, 451, 389 N.Y.S.2d 159, 160 (3rd Dep't 1976) ("To establish a cause of action for false imprisonment, a plaintiff must establish that he was intentionally confined by the defendant, that he was conscious of his confinement and did not consent thereto, and that the confinement was not otherwise privileged.").

3

addressed by the United States Constitution . . . ."); *Koulkina v. City of New York*, 559 F.Supp.2d 300, 333 (S.D.N.Y. 2008) ("Claims sounding in negligence . . . do not rise to the level of a constitutional deprivation . . . and, thus, cannot form the predicate of a Section 1983 claim.") (internal citations omitted). Any claims against Menendez, if included in the complaint, would thus fail as a matter of law. No other basis for federal jurisdiction is apparent.

## CONCLUSION

For these reasons, the second proposed amended complaint would fail to state a claim against Menendez under either § 1983 or parallel New York tort law. Accordingly, plaintiff's request for leave to amend his complaint is denied on grounds of futility. *See Foster v. Humane Society of Rochester and Monroe County, Inc.*, 724 F.Supp.2d 382, 397 (W.D.N.Y. 2010). It is, of course, without prejudice to the assertion of any other state law claims he may have against Menendez and/or the City of New York in a state court of appropriate jurisdiction.

SO ORDERED.

s/ ENV

_____
ERIC N. VITALIANO
United States District Judge

Dated: Brooklyn, New York
       March 19, 2013